IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | |
| Plaintiff, | |
| v. | Case No. 3:22-CV-2733-NJR |
| TEDDY'S JU JOINT, LLC, and KHALILAH LIDDELL, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This is an action for damages related to the unauthorized and illegal receipt and exhibition of *Manny Pacquiao vs. Adrien Broner* (the "Event") on January 19, 2019, by Defendants Teddy's Ju Joint, LLC, and its owner, Khalilah Liddell ("Liddell"). (Doc. 1). Defendants did not answer or otherwise respond to the Complaint, and the Clerk of Court entered default under Federal Rule of Civil Procedure 55(a). (Doc. 16). Plaintiff Joe Hand Promotions, Inc. ("JHP"), now moves for default judgment under Rule 55(b)(2) and the entry of an award against Teddy's Ju Joint and Liddell. (Doc. 17). For the following reasons, the Court grants the motion and enters default judgment in favor of JHP.

## BACKGROUND

JHP is a distributor of sports and entertainment programming to commercial establishments including bars, restaurants, clubs, and lounges. (Doc. 18-1 at ¶ 3). Defendant Liddell is the owner of Teddy's Ju Joint, a bar located in Centerville, Illinois. (Doc. 18-5 at Ex. B). In 2019, JHP had the exclusive right to license the exhibition of the

Event to establishments like Teddy's Ju Joint. (Doc. 18-1 at ¶ 3). Establishments that contracted with JHP to broadcast the Event paid a sublicense fee based on the capacity of the establishment. (*Id.* at ¶ 7). For example, for a location with a maximum fire code occupancy of up to 100 people, the sublicense fee was $1,500 for the Event. (*Id.*). If a commercial establishment paid JHP the proper fee, JHP notified the establishment's cable or satellite provider to unscramble the Event for receipt through its cable or satellite account. (*Id.* at ¶ 9).

Despite the required fee, some establishments illegally obtain programming without paying JHP, requiring JHP to police its signals to identify and prosecute establishments that pirate its programming. (*Id.* at ¶¶ 4-5). Specifically, JHP has hired independent auditors to visit establishments that are showing the programming without authorization. (*Id.* at ¶¶ 4-6).

In this case, auditor Joshua Wallick visited Teddy's Ju Joint on January 19, 2019, and observed the Event being broadcast to the patrons even though the establishment had not paid a sublicensing fee to JHP. (Doc. 18-4). Wallick noted that Teddy's Ju Joint had a capacity of 60 to 70 people, and there were approximately 43 patrons watching the Event on two flat screen televisions. (*Id.*)

JHP subsequently initiated this action[1] alleging satellite piracy in violation of 47 U.S.C. § 553, or, alternatively, cable piracy in violation of 47 U.S.C. § 605. (Doc. 1). JHP served Liddell with the Complaint on February 7, 2023. (Doc. 9). On multiple occasions,

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action was brought under the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605.

JHP attempted to serve Teddy's Ju Joint's registered agent at the registered office and its principal place of business, but it was unable to do so. (Doc. 11-1). Therefore, on February 20, 2023, JHP served its Complaint and Summons on the Illinois Secretary of State pursuant to Federal Rule of Civil Procedure 4(e)(1) and 805 ILCS 180/1-50(b) ("The Secretary of State shall be irrevocably appointed as an agent of a limited liability company upon whom any process, notice, or demand may be served . . . [w]henever the limited liability company's registered agent cannot with reasonable diligence be found at the registered office in this State or at the principal place of business."). (*Id.*). On February 21, 2023, JHP mailed the Affidavit of Compliance for Service on Secretary of State, the Summons, and the Complaint via certified mail to Teddy's Ju Joint's registered agent address and principal place of business. (*Id.*).

To date, neither Liddell nor Teddy's Ju Joint have answered or otherwise responded to the Complaint.

## LEGAL STANDARD

Rule 55(a) requires the clerk to enter default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. FED. R. CIV. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed. 2010). "Once default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)).

Under Rule 55(b)(2), "the court may enter a default judgment if the amount at issue is for a sum certain." *Am. Nat'l Bank & Trust Co. of Chi. v. Alps Elec. Co.*, No. 99 C 6990, 2002 WL 484845, at *1 (N.D. Ill. Mar. 29, 2002) (citing FED. R. CIV. P. 55(b)(2)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Instead, the plaintiff must introduce evidence on the issue of damages, and the district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.*

Because the damages in this case are dictated by statute and supported by detailed affidavits, the Court finds that an evidentiary hearing is not required. *See J & J Sports Prods., Inc. v. Maria Molson*, No. 2:17 CV 194, 2018 WL 345766, at *3 (N.D. Ind. Jan. 9, 2018) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1322 (7th Cir. 1983)) ("A judgment by default may not be entered without a hearing on damages unless . . . the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."); *Virgin Records Am., Inc. v. Johnson*, 441 F.Supp.2d 963, 965 (N.D. Ind. 2006) (citing *Ortiz–Gonzalez v. Fonovisa*, 277 F.3d 59, 63 (1st Cir. 2002)) ("Because Plaintiffs seek only the minimum statutory damages [for copyright infringement] and these damages are clearly ascertainable from the complaint, no evidentiary hearing is necessary."); *Cap. Recs., Inc. v. Mattingley*, 461 F. Supp. 2d 846, 851 (S.D. Ill. 2006).

## DISCUSSION

JHP is an aggrieved party under 47 U.S.C. §§ 553 and 605, but it can only recover

damages under one section. *See Joe Hand Promotions, Inc. v. L. A. Moon LLC*, No. 12-CV-446-WMC, 2013 WL 633572, at *1 (W.D. Wis. Feb. 20, 2013) (*citing United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996)). JHP has elected to proceed under § 605, which allows for statutory damages of not less than $1,000 or more than $10,000 for each violation. § 605(e)(3)(C)(i)(II). If the Court finds the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," it has discretion to increase the damages award up to $100,000 for each violation. § 605(e)(3)(C)(ii). Here, JHP requests statutory damages of $1,500 and enhanced damages of $10,000 for Defendants' willful violation. JHP also seeks $2,945.15 in attorney fees and costs under § 605(e)(3)(B)(iii).

In support of its motion for default judgment, JHP provided an affidavit from Joe Hand, the president of JHP, attesting that JHP had exclusive commercial licensing rights to the Event on January 19, 2019, including all undercard bouts and commentary. (Doc. 18-1 at ¶ 3). He further attested that Defendants did not pay the commercial fee to JHP to legally receive the Event through their cable or satellite provider. (*Id.* at ¶ 11). Likewise, JHP did not notify Teddy's Ju Joint's cable or satellite provider to unblock its account to allow it to receive and broadcast the Event to its patrons, nor did it authorize Teddy's Ju Joint to exhibit the Event to its patrons. (*Id.* at ¶¶ 12-13).

Joshua Wallick, the auditor who visited Teddy's Ju Joint on January 19, 2019, attested that he entered the establishment and observed about 43 people watching the Event on two televisions. (Doc. 18-4). He further attested that the establishment's approximate capacity is 60 to 70 people. (*Id.*). A rate card provided by JHP states that it

charged $1,500 for establishments with a fire code occupancy of 1 to 100 to broadcast the Event. (Doc. 18-3).

Some courts award damages under § 605 based on the number of patrons at the establishment while others award the license fee that the defendant would have paid, based on its maximum capacity, if it had legally purchased the broadcast. *Compare J & J Sports Prods., Inc. v. Tu*, No. 08 C 4119, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008) (finding $55 per patron to be a reasonable award), *with Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, No. 3:11-CV-90 CAR, 2011 WL 4102314, at *4 (M.D. Ga. Sept. 14, 2011) (awarding statutory damages based on the event's rate card). In this case, JHP requests $1,500 based on the rate that Defendants would have paid if they legally purchased the Event. The Court finds this request reasonable and awards $1,500 in statutory damages.

Turning to JHP's request for enhanced damages, the Court finds that JHP has provided evidence that Defendants' conduct was willful and committed for direct or indirect commercial advantage or private financial gain. Mr. Hand attested that, to the best of his knowledge, his programming—including the Event at issue here—cannot be mistakenly, innocently, or accidentally intercepted. (Doc. 18-1 at ¶ 16). Ryan R. Janis, Mr. Hand's attorney, also submitted an affidavit along with screenshots of the public Facebook pages of Teddy's Ju Joint and Liddell. (Doc. 18-5). On January 19, 2019, Liddell posted "Hosting @ Teddy's Ju Joint Tonight the Pacquiao vs Broner Fight, Free Admission, Free Food, Doors Open @ 7 pm." (*Id.* at Ex. A). Mr. Hand attested that, in his experience, publicizing the event on Facebook is done solely to increase the number of patrons and in turn realize greater financial gain from the unauthorized broadcast of the

Event. (Doc. 18-1 at ¶ 15). He further attested that signal piracy such as that committed by Defendants not only has caused JHP to lose several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities. (*Id.* at ¶ 18).

From this evidence, the Court concludes that Defendants willfully violated the statute. *See, e.g.*, *Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, No. 3:11-CV-90 CAR, 2011 WL 4102314, at *4 (M.D. Ga. Sept. 14, 2011) (willfulness under § 605 is established when an event is broadcast without authorization); *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490–91 (S.D.N.Y.1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

To determine the appropriate amount of enhanced damages, courts look to factors including: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Tu*, No. 08 C 4119, 2008 WL 4833116, at *2. "In connection with those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.*

In this case, the evidence does not establish that Defendants are repeat violators of the statute, and Mr. Wallick attested that Teddy's Ju Joint did not collect a cover charge on the night of the Event. (Doc. 18-4). But Defendants undoubtedly gained financially

when they broadcast the Event without paying for it. As argued by JHP, Defendants profited by at least $1,500 over any other establishment of a similar size that chose to pay for a sublicense. Defendants also advertised the Event on Facebook, which was met with 58 "likes," 16 "shares," and several comments. And the event was a relative success, given that about 43 people were in attendance in a venue that could hold 60 to 70 people. The Court is further persuaded by Mr. Hand's affidavit, in which he stated that unchecked signal piracy—as well as the perceived lack of consequences on behalf of the offenders—has caused his company to lose several million dollars in revenue. (Doc. 18-1 at ¶¶ 18-19). While the Court could award up to $100,000, it finds that an award of $10,000 in enhanced damages is substantial enough to discourage future violations but not so severe so as to financially ruin Defendants' business.

With regard to attorney fees and costs, the Court has reviewed the declaration of Yeoeun Yoon, attorney for JHP, and finds the requested fees and costs reasonable and well supported. (Doc. 18-6). Counsel spent six hours on this matter at a rate of $250 per hour, for a total of $1,500 in fees. Counsel also expended $402 on the filing fee and $1,043.15 to effectuate service. In total, JHP will be awarded $2,945.15 in attorney fees and costs under § 605(e)(3)(B)(iii).

Finally, the Court finds Defendants, Teddy's Ju Joint and Liddell, are jointly and severally liable for the violation of § 605. Courts "generally hold that an individual is liable under Section 605 if she had a right and ability to supervise the violation and had a financial interest in it." *See G & G Closed Cir. Events, LLC v. Castillo*, 327 F. Supp. 3d 1119, 1129 (N.D. Ill. 2018). As the owner of Teddy's Ju Joint, Liddell had the right and ability to

supervise the infringing activity. In fact, Liddell personally publicized the Event and its broadcast at Teddy's Ju Joint on Facebook. (Doc. 18-5 at Ex. A). Liddell also had "an obvious financial interest in showing the fight." *Id.* She paid nothing for the Event and publicized it online, obviously with the goal of attracting customers to her establishment. Thus, the Court finds Liddell individually liable for the violation of § 605.

## Conclusion

For these reasons, the Motion for Default Judgment filed by Plaintiff Joe Hand Productions, Inc. (Doc. 17) is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and against Defendants Teddy's Ju Joint, LLC, and Khalilah Liddell for a total award of $14,445.15, and to close this case.

**IT IS SO ORDERED.**

DATED:   February 13, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**